**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>MARK WILLIAMS WILLS,<br>*Defendant.* | CRIMINAL ACTION<br>NO. 25-00406 |

**Pappert, J.** **October 2, 2026**

**MEMORANDUM**

Mark Wills was charged by indictment with three counts of use and attempted use of an interstate commerce facility to entice a minor to engage in sexually explicit conduct in violation of 18 U.S.C. § 2422(b); three counts of manufacture and attempted manufacture of child pornography in violation of 18 U.S.C. §§ 2251 (a), (e); four counts of distribution, attempted distribution and willfully causing the distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), 2(b); one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2); two counts of cyberstalking of a minor in violation of 18 U.S.C. § 2261A(2)(B); and one count of interstate threats in violation of 18 U.S.C. § 875(c).

Wills moves to suppress all evidence, including electronic devices, phones and their contents, ledgers and handwritten lists of the alleged victims' names, gathered from a search of his residence pursuant to a search warrant. He contends that the warrant lacked particularity and that the good faith exception to the exclusionary rule does not apply. The Court held a hearing at which Bucks County District Attorney's Office Detective Eric Landamia, Hulmeville Borough Chief of Police John Baran and Hulmeville Borough Manager and Zoning Officer William Wheeler testified for the

government and Zachary Cross-Wills and Brianna Constantine for the defendant. The Court credits each witness's testimony and denies the Motion for the reasons that follow.

I

A

Eric Landamia has been a police officer in the Commonwealth of Pennsylvania since 2001 and a detective with the Bucks County District Attorney's Office for the past thirteen years. ((Hr'g Tr. 5:17–18; Aff., Def.'s Ex. D1; Gov't's Ex. G2.) He has extensive experience with cases involving the exploitation of children. (Aff., Def.'s Ex. D1; Gov't's Ex. G2.)

On December 16, 2024, the District Attorney's Office began an investigation into two tips pertaining to the sharing of child sexual abuse material that were submitted to the National Center for Missing and Exploited Children by MediaLab/Kik and Snapchat. (Def.'s Mem. in Supp. of Suppression at 4, Dkt. No. 37; Gov't Ex. G2.) Landamia, the lead detective on the investigation, discovered that the IP address associated with the account allegedly used to share the CSAM files was assigned to "Brianna Constantine," at 310 Main Street, Hulmeville, PA 19047. (Def.'s Mem. at 5; Gov't Resp. Br. at 3, Dkt. No. 38.) After searching Accurint, a law enforcement database, Landamia learned Mark Wills and Zachary Cross-Wills also lived there. (*Id.*; Gov't Resp. at 3.)

Landamia obtained a search warrant for the MediaLab/Kik account used to allegedly send CSAM and was able to compare "several selfie-style images of an adult male" and "concluded that the images were consistent" with Wills' driver's license

photo. (Gov't Resp. at 3–4.) Wills' address, according to his license, was 310 Main Street. (*Id.* at 4.) Landamia also ran an Accurint search specifically for Wills, and 310 Main Street was the only address associated with him. (Hr'g Tr. 20:6–21:8.)

Landamia then contacted Chief Baran. (*Id.* at 8:10–18.) Baran told Landamia that "[e]ven though 310 Main is technically one house, it is separated into two residences. 308 Main St is towards the back of the house and the main door is on the driveway side of the home." (Def.'s Ex. D6; Gov't Ex. G1.) He sent Landamia Hulmeville Police Department reports relating to 310 Main Street, as well as two incident reports that mentioned 308 Main Street: one from 2015 and one from 2019. (Def.'s Exs. D4 & D5.) Neither the 2015 nor 2019 report mentioned Wills, who bought 310 Main Street in 2022 or 2023. (*Id.*; Hr'g Tr. 21:9–13, 82:10–12.)

In addition to sending Landamia the reports, Baran spoke to Wheeler, who grew up in Hulmeville Borough and does "just about everything" there. (Hr'g Tr. 66:10–14, 91:8–24.) Wheeler testified that he would refer to the entire property as 310 "[b]ecause it was only the front of the building [and] the side of the front building." (*Id.* at 94:12–18.) He testified that he has never referred to any portion of the property as 308 Main Street and that "there wasn't any 308 Main Street." (*Id.* at 105:17–22, 107:17–18.)

After speaking with Wheeler, Baran told Landamia that, "[a]ccording to Borough records, Mark Wills owns the entire property. The 308 part of the house was created by Mr. Wills and was never approved by the Borough." (Def.'s Ex. D8; Gov't's Ex. G1.) He explained that "[w]e are unsure when he added the number 308 above the rear door." (*Id.*) Baran told Landamia that Wills "added a small addition on to the back and never

got permits for it"[1] and that "the son and his girlfriend live in the front part of the home" but "[o]fficers have seen Mr. Wills enter the home via the front door." (*Id.*)

While the investigation was ongoing, Wills went to the Hulmeville Police Station to file a complaint against his neighbor. (Def.'s Ex. D9; Gov't's Ex. G1.) He spoke with Baran, who then told Landamia that Wills "says he lives in the back of the house by himself. (308)." (*Id.*) Baran also sent Landamia photographs of the property. (*Id.* at 22:11; Gov't Exs. G3 & G4.) Those pictures depicted a front-facing view of the white-sided portion of the property as well as a side-facing view of the blue-sided portion of the property—the portion Wills contends is 308 Main Street. (Gov't Exs. G3 & G4.) Landamia also learned that the deed to 310 Main Street lists Wills and his son, Zachary Cross-Wills, as the owners, but that the Recorder of Deeds did not have a deed for 308 Main Street. (Hr'g Tr. 18:10–19:11; *see also* Gov't's Ex. G6.)

Landamia did not speak to anyone else at Hulmeville Borough during his investigation, personally look through the Borough files or personally visit the property—although he may have driven past it. (*Id.* at 19:24–20:2, 22:2–9.) He did not consult the Post Office about mail deliveries or check utility registrations for 310 Main Street or what Wills identified as 308 Main Street. (*Id.* at 22:17–22.) Ultimately, Landamia largely relied on information from Baran, who in turn received relevant information from Wheeler. (*Id.* at 23:1–5, 66:5–14.)

---

[1] Wheeler testified that he had spoken to Wills after being made aware that he had been working on his home without a permit and confirmed that Wills had later applied for and received a permit. (Hr'g Tr. 94:22–96:18.) Wheeler acknowledged that the permit was for work at 308 Main Street but reiterated that he has never referred to any portion of the premises as 308 Main Street. (*Id.* at 98:6–11, 105:20–22.)

B

Based on his investigation, Landamia applied for a search warrant on January 22, 2025. (Hr'g Tr. 26:20–24.) His affidavit of probable cause in support of the warrant application did not mention the reports referencing 308 Main Street from 2015 and 2019, or that different people lived in 310 Main Street and the portion Wills calls 308 Main Street prior to Wills purchasing the property. (*Id.* at 28:6–29:4.)

In his affidavit under the heading "INFORMATION RELATING TO THE RESIDENCE TO BE SEARCHED," Landamia described the property as:

> located at 310 Main Street in Hulmeville, PA 19047 (Hulmeville Borough, Bucks County. The residence is a three (3) story residence with a white siding face and blue siding right-side. The front door is dark in color with an oval glass pane in its center. The number "310" is displayed vertically on a porch post outside the front door. There is a white entry door on the blue-sided portion of the residence. According to Hulmeville Borough records, Mark Wills owns the property. The blue-sided portion of the residence, which includes a separate entry door, is reported by Mark Wills to be 308 Main Street. The 308 address, per Hulmeville Borough representatives, was created by Mr. Wills and was never approved by the Borough.

(Aff., Def.'s Ex. D1 at 15–16; Govt's Ex. G2). He also included for the judge the two photographs he obtained from Baran. (*Id.* at 16.)

Landamia testified that he did not apply for two separate warrants for 310 and 308 Main Street because he was "utilizing the most recent information" from Baran and, in an abundance of caution, "included both a description of and photograph of the entire structure because that was the requested structure to be searched." (Hr'g Tr. 57:16–23.) Bucks County Magisterial District Judge Daniel Baranoski approved the application and initialed each page of Landamia's affidavit. (Def.'s Ex. D1; Govt's Ex. G2.) Wills agreed that the search warrant incorporated the affidavit. (Hr'g Tr. 143:17–

19.) Under the heading "SPECIFIC DESCRIPTION OF PREMISES," the warrant described the residence as:

> located at 310 Main Street in Hulmeville, PA 19047 (Hulmeville Borough, Bucks County. The residence is a three (3) story residence with a white siding face and blue siding right side. The front door is dark in color with an oval glass pane in its center. The number "310" is displayed vertically on a porch post outside the front door. There is a white entry door on the blue-sided portion of the residence. The search includes any vehicles and outbuildings on the property.

(Warrant, Def.'s Ex. D1 at 1; Govt's Ex. G2.)

The day before the search, Landamia emailed the operations team telling them that, based on the house's layout and structure, "there will be 2 entrances to hit at the same time" and that he did "not know if the two living areas join somewhere or if they are separated entirely." (Gov't Ex. G5.) Likewise, Baran did not know the house's interior layout prior to executing the warrant. (Hr'g Tr. 132:22–24.)

Officers executed the warrant on January 24, 2025, using both the "310" and "308" entrances. (Def.'s Mem., at 5.) The door to the portion Wills calls 308 Main Street had its own lock, and, once inside, the officers saw there was no way to access the other portion of the premises without stepping outside. (Hr'g Tr. 39:18–40:16.) Officers seized electronic devices and handwritten documents from the living and nearby kitchen area, directly off the door on the portion of property with blue siding. (Gov't's Resp., at 11.)

## II

### A

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported

by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Warrant Clause requires particularity "to prevent general searches" and "ensure[] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

Courts must evaluate alleged Fourth Amendment violations based on "the information available to [law enforcement] at the time they acted." *Id.* at 85. "Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued." *Id.* Accordingly, "a search warrant, 'insofar as it authorize[s] a search that turn[s] out to be ambiguous in scope,' will, nevertheless, be upheld against a particularity challenge if the warrant described the structure as it was known or should have been known to the officers after reasonable inquiry under the circumstances." *United States v. Ritter*, 416 F.3d 256, 266 (3d Cir. 2005) (quoting *Garrison*, 480 U.S. at 86); *see also Kao v. Markel Ins. Co.*, 708 F. Supp. 2d 472, 479 (E.D. Pa. 2010) ("[A] warrant issued for a multi-unit structure that does not specify a particular apartment may still be valid when issued, if the police officers who applied for the warrant reasonably believed, after a reasonable investigation, that the premise was in fact a single-unit dwelling.").

"To deter Fourth Amendment violations, when the Government seeks to admit evidence collected pursuant to an illegal search or seizure, the judicially created doctrine known as the exclusionary rule at times suppresses that evidence and makes it unavailable at trial." *United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014) (en

banc), *cert. denied*, 135 S.Ct. 1448 (2015) (citing *Herring v. United States*, 555 U.S. 135, 139 (2009)).

B

To meet the particularity requirement, a warrant must describe the place to be searched "such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *U.S. v. Bedford*, 519 F. 2d 650, 655 (3d Cir. 1975) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)). "The standard is one of practical accuracy rather than technical nicety." *United States v. Leandry-Ocasio*, No. 2:19-CR-00151-13, 2024 WL 229757, at *6 (E.D. Pa. Jan. 22, 2024) (quoting *Bedford*, 519 F. 2d at 655).

Wills claims that Landamia knew or should have known that 310 and 308 Main Street were separate dwellings. (Def.'s Mem. at 8, 10.) He criticizes the thoroughness of Landamia's investigation and argues that, as a result, his affidavit did not "accurately describe the fact that these two units were separated." (Hr'g Tr. 143:10–12, 152:19–153:18.)

But Landamia's investigation didn't have to be perfect—just reasonable under the circumstances. He relied on information from the police chief, which was in part coming from the borough manager and zoning officer. (Hr'g Tr. 66:5–14.) *See United States v. Bernard*, No. 20-00208, 2020 WL 6395465 (E.D. Pa. Nov. 2, 2020), *aff'd*, No. 23-1347, 2026 WL 2583095 (3d Cir. Sept. 1, 2026) (noting that whether the officer "could have done more is not the dispositive issue" because their investigation was reasonably thorough); *U.S. v. Yusuf*, 461 F.3d 374, 385 (3d Cir. 2006) ("[I]nformation received from other law enforcement officials during the course of an investigation is

generally presumed to be reliable." (citing *United States v. Ventresca*, 380 U.S. 102, 111 (1965))). And the descriptions of the property in the warrant and affidavit, in conjunction with the included pictures of the structure, were enough for the officers executing the warrant to reasonably "ascertain and identify the place intended to be searched." *Garrison*, 480 U.S. at 88.

In any event, whether Landamia should have done more or known whether 310 and 308 Main Street are "separate dwellings" is immaterial because the warrant and incorporated affidavit authorized the search for both portions of the structure. The warrant expressly identified the place to be searched as 310 Main Street, which it described is a three (3) story residence with a white siding face and blue siding right side, with a white entry door on the blue-sided portion of the residence. (Def.'s Ex. D1 at 1; Gov't's Ex. G2.) And the affidavit also said that Borough records show that Mark Wills owned 310 Main Street and described that the blue-sided portion of the residence, which includes a separate entry door, is reported by Mark Wills to be 308 Main Street, though the 308 address was created by Mr. Wills and never approved by the Borough. (Aff., Def.'s Ex. D1 at 15–16; Govt's Ex. G2.)

The warrant thus authorized the officers to search the entire property, which the judge knew included the blue-sided portion Wills calls 308 Main Street. Wills acknowledged that, "on its face, the affidavit which is incorporated into the warrant describes the two addresses." (Hr'g Tr. 144:20–24.) *See, e.g.*, *United States v. Wylie*, No. 3:16CR220-1, 2020 WL 636513, at *8 (M.D. Pa. Feb. 11, 2020) (citing *U.S. v. Johnson*, 26 F.3d 669, 694 (7th Cir. 1994) (finding that a search warrant satisfied the particularity requirement, despite failing to include the specific address of an upper

unit located in the target duplex building, when it reasonably authorized a search of the entire premises)).

While Wills also argues that the officers should have stopped their search as soon as they realized (for the first time) the living areas were separated on the inside, that is not required where the Court "is satisfied that the Search Warrant validly encompassed the entire Premises." *Wylie*, 2020 WL 636513, at *9.

III

Even if the search of 308 Main Street violated the Fourth Amendment, suppression would not be appropriate. Application of the exclusionary rule is "limited to those 'unusual cases' in which it may achieve its objective: to appreciably deter governmental violations of the Fourth Amendment." *Katzin*, 769 F.3d at 170 (3d Cir. 2014) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). Because suppression is "an 'extreme sanction' that carries significant costs," it "has always been our last resort, not our first impulse." *United States v. Caesar*, 2 F.4th 160, 167 (3d Cir. 2021) (quoting *Leon*, 468 U.S. at 926; *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

Courts must "determine whether a well-trained officer would reasonably believe the search was legal," making suppression inappropriate, or if there has been "deliberate, reckless, or grossly negligent conduct" justifying the exclusion of evidence. *United States v. Rosario*, 180 F.4th 512, 524 (3d Cir. 2026) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)); *Caesar*, 2 F.4th at 169 ("Since *Leon*, the Supreme Court has further refined the good faith exception, placing the culpability of the officer's misconduct at the center of the deterrence analysis." (citation omitted)). Courts look at "the totality of the circumstances when evaluating good faith—'considering not only any

defects in the warrant but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known.'" *LaCosta-Franco*, 828 F. Supp. 3d 543, 561 (E.D. Pa. 2026) (quoting *Caesar*, 2 F.4th at 170).

The Third Circuit Court of Appeals has held the good faith exception does not apply in circumstances where (1) the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate judge abandoned their judicial role and failed to perform their neutral and detached function; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or things to be seized. *Rosario*, 180 F.4th at 524 (citing *United States v. Zimmerman*, 277 F.3d 426, 436–37 (3d Cir. 2002). Wills does not contend Landamia's affidavit was deliberately or recklessly false; he argues only that the warrant failed to particularize the place to be searched. (Def.'s Mem. at 11; Hr'g Tr. 141:7–12.) Specifically, he feels Landamia's description of the property in his affidavit was inaccurate because Landamia knew or should have known from prior reports that 310 and 308 Main Street were separate dwellings. (Hr'g Tr. 148:14–149:10; Def.'s Exs. D4 & D5.)

Wills criticizes Landamia for not determining whether the portions of the property had separate utilities or mail delivery, (Hr'g Tr. 153:11–15), but again, Landamia's investigation was reasonable under the circumstances, and the fact that there was (and still is) ambiguity about the relationship between 310 and 308 Main Street does not render the warrant facially deficient. Landamia relied on local authorities and considered information from Hulmeville records and the recorder of

deeds. He was then appropriately "careful to describe the entire property including the white-sided portion and the blue-sided portion as 310 Main Street," (*id.* at 57:2–11), and the judge approved the search to include that blue-sided portion which "is reported by Mark Wills to be 308 Main Street." (Aff. Def.'s Ex. D1; Govt's Ex. G2.)

Wills further claims the officers should have stopped when they saw that the structure was not connected from the inside, but, again, they were relying on a valid warrant that they reasonably believed granted them the authority to search the entire property. Nothing suggests Landamia or any other officer conducting the search should have known that the portion of the property Wills calls 308 Main Street was not included in the "place to be searched."

Because police reasonably relied on the warrant authorizing them to search the "blue-sided portion of the residence . . . reported by Mark Wills to be 308 Main Street," suppression would be inappropriate. (Aff. Def.'s Ex. D1; Govt's Ex. G2.) Conversely, the social costs of suppression would be extremely high because suppression would involve "omitting 'reliable, trustworthy evidence' of [Wills'] guilt." *Katzin*, 769 F.3d at 171 (quoting *Davis*, 564 U.S. at 237). That social cost significantly outweighs the deterrent value of suppression here, and the good faith exception applies.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.